TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 23-102 |
| of | : | |
| | : | April 18, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| RYAN B. McCARROLL | : | |
| Deputy Attorney General | : | |

---

The HONORABLE ERIK A. NASARENKO, VENTURA COUNTY DISTRICT ATTORNEY, has requested an opinion on three questions relating to the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), which generally requires that legislative bodies of local government agencies conduct their meetings in a manner that is open and accessible to the public.[1]

## QUESTIONS PRESENTED AND CONCLUSIONS

The Ventura Chamber of Commerce hosted an annual breakfast at which the mayor, who is a member of the city council, delivered a "State of the City" address. Members of the public could attend the event in person, but only if they purchased a ticket from the chamber of commerce. There was no other way for the public to watch the address in real time. Given this context, the questions presented are:

1. If a majority of the members of the city council were to attend the event described above, would that event constitute a "meeting" of the city council within the scope of the Brown Act under Government Code section 54952.2(a)?

---

[1] Statutory citations throughout the body of this opinion are to the Government Code.

Yes.  If a majority of the members of the city council were to attend the event described above, that event would constitute a congregation of a majority of the councilmembers at the same time and location to hear—and potentially discuss—an item within their subject matter jurisdiction.  As such, the event would constitute a "meeting" of the city council within the meaning of Government Code section 54952.2(a), and the meeting would have to comply with the open-meeting requirements of the Brown Act, unless a statutory exception applies.

2.  Would the Brown Act exception for conferences or similar gatherings set forth in Government Code section 54952.2(c)(2) apply to such an event?

No.  The event as described consisted of a single speech by a single official regarding the state of a single city.  As such, it would not satisfy the Brown Act exception for conferences and similar gatherings set forth in Government Code section 54952.2(c)(2) because that exception involves a discussion of issues of general interest to the public or to public agencies of the type represented by the city council.

3.  Would the Brown Act's exception for "community meetings" set forth in Government Code section 54952.2(c)(3) apply to such an event?

No.  The Brown Act exception for community meetings set forth in Government Code section 54952.2(c)(3) requires, among other things, that the event must be open to the public.  The event in question would not satisfy that element because members of the public could only attend by purchasing a ticket from the chamber of commerce.

## BACKGROUND

The City of Ventura is a charter city with a council-manager form of government.[2] The city council consists of seven members elected by district for staggered terms of four years.[3]  After each election, the council appoints one of its members to serve as mayor for a term of two years.[4]  The mayor acts as the official head of city government on public and ceremonial occasions.[5]  The mayor also presides over sessions of the city council and

---

[2] Ventura City Charter, §§ 800-803; Ventura Municipal Code, §§ 2.315.010-2.315.030.

[3] Ventura City Charter, § 507; Ventura Municipal Code, §§ 2.210.010-2.210.030.

[4] Ventura City Charter, § 703, subd. (a).

[5] Ventura City Charter, § 703, subd. (c).

2

determines the order of business under council rules.[6]  But the mayor has no veto power over the council.[7]

On September 13, 2022, the city announced on social media that the mayor would deliver a "State of the City Address" on September 22 at an event "hosted by the Ventura Chamber of Commerce in the ballroom of the Crowne Plaza Ventura Beach."[8]  The Ventura Chamber of Commerce is a private, voluntary association that promotes commercial interests in and around the city.[9]  The announcement indicated that members of the public could purchase tickets to the event from the chamber.[10]  The price of a ticket was $60 for members of the chamber and $80 for everyone else.[11]  The announcement did not mention any other way for the public to watch the mayor's address.[12]

On September 16, the city posted on social media a second announcement regarding the event.[13]  The announcement stated that the mayor's presentation would be "available later online."[14]  It also indicated that the mayor would "share this presentation with the public" at a regular meeting of the city council scheduled for October 10.[15]

On September 20, the Ventura City Attorney asked the Ventura County District Attorney, our requestor here, whether a quorum of the city council could attend the

---

[6] *Ibid*.

[7] *Ibid*.

[8] City of Ventura, Facebook (Sept. 13, 2022) https://www.facebook.com/CityofVentura/posts/pfbid0QFf1qQNmUBmXKgAnJCEsL2riKiz9S6m7jmJbmJQBuBKx6f6MNgyXdx1kknZPCK32l (as of Apr. 17, 2024).

[9] Ventura Chamber of Commerce, Who We Are, https://venturachamber.com/who-we-are (as of Apr. 17, 2024).

[10] See note 8, *supra*; accord, Requestor Letter (Jan. 20, 2023) p. 1.

[11] Ventura Chamber of Commerce, 2022 State of the City, https://ventura.chambermaster.com/events/details/2022-state-of-the-city-22700?fbclid=IwAR2qdmAVPvAH8U4Cr93LqUT3KKGSVPpujHhezg4SV2L440llIrsNHPhnvQM (as of Apr. 17, 2024).

[12] See notes 8 and 11, *supra*.

[13] City of Ventura, Facebook (Sept. 16, 2022) https://www.facebook.com/CityofVentura/posts/456982029809969 (as of Apr. 17, 2024).

[14] *Ibid*.

[15] *Ibid*.

23-102

chamber of commerce event without violating the Brown Act.[16] The district attorney verbally advised the city attorney that "less than a quorum of the city council should attend the address," presumably so that there would not be a "meeting" of the council within the scope of the Act.[17] The mayor ultimately delivered the address during the chamber of commerce event on September 22 as scheduled.[18] We understand from the opinion request that "less than a quorum of the council attended the event."[19]

The district attorney and city attorney subsequently exchanged letters with each other regarding whether there would have been a Brown Act violation if a majority of the city council had attended the chamber of commerce event.[20] There appears to have been no dispute that, if a majority of the city council had attended, the event would have been a "meeting" of the council as the term is defined in section 54952.2(a) of the Brown Act. But the officials disagreed about whether such an event would qualify for either of two Brown Act exceptions set forth in section 54952.2(c).[21] Specifically, the city attorney argued that "attendance by a majority of Councilmembers at a State of the City address is not a Brown Act meeting under a plain reading of the conference and community meeting exceptions."[22]

The district attorney asked us to resolve the dispute by answering three questions. As phrased by the district attorney, the questions were as follows:

> 1. Is it a violation of the Brown Act for a mayor to deliver a "State of the City" address to attendees at a fee-only private event specifically held to facilitate the address, where all or a quorum of fellow councilmembers are in attendance? [¶] 2. Does the "conference exception" of the Brown Act

[16] See Letter from Ventura County District Attorney to Ventura City Attorney (Oct. 18, 2022) p. 1.

[17] *Ibid*.

[18] See City of Ventura, 2022 State of the City Address, https://www.youtube.com/watch?v=r_nkV7fxnV0 (as of Apr. 17, 2024).

[19] Requestor Memorandum (Jan. 20, 2023) p. 2.

[20] Letter from Ventura County District Attorney to Ventura City Attorney (Oct. 18, 2022); Letter from Ventura City Attorney to Ventura County District Attorney (Dec. 2, 2022).

[21] See Letter from Ventura County District Attorney to Ventura City Attorney, *supra*, at pp. 2-3; Letter from Ventura City Attorney to Ventura County District Attorney, *supra*, at pp. 1-2.

[22] Letter from Ventura City Attorney to Ventura County District Attorney, *supra*, at p. 1, citing Gov. Code, §§ 54952.2, subds. (c)(2) & (c)(3).

23-102

apply?  [¶]  3.  Does the "community meetings exception" of the Brown
Act apply?

We have rephrased those questions slightly for ease of analysis.  Before presenting
that analysis, we pause to note the limited nature of our inquiry.  Our task here is to
determine whether the posited hypothetical of a majority of councilmembers attending
the chamber of commerce event as described herein would constitute a "meeting" as
defined in the Brown Act.  As such, we express no view on potential secondary questions
that might arise in a district attorney's consideration of enforcement options regarding an
actual event.  With that caveat, we proceed to summarize the established principles of law
and then apply those principles to the hypothetical described above.

## ANALYSIS

The California Constitution guarantees "public access to the meetings of public
bodies."[23]  The Brown Act promotes that guarantee by establishing minimum standards
of public access at the local level.[24]  Under the Constitution, each of those standards
"shall be broadly construed if it furthers the people's right of access, and narrowly
construed if it limits the right of access."[25]

As relevant here, the Brown Act states that every meeting of a city council or other
legislative body of a local agency "shall be open and public, and all persons shall be
permitted to attend any meeting of the legislative body of a local agency, except as
otherwise provided in this chapter."[26]  The Act elaborates that a member of the public
"shall not be required, as a condition to attendance at a meeting of a legislative body of a
local agency, to register his or her name, to provide other information, to complete a
questionnaire, or otherwise to fulfill any condition precedent to his or her attendance."[27]

---

[23] Cal. Const., art. I, § 3, subd. (b)(7); see *id*. at § 3, subd. (b)(1).

[24] See Cal. Const., art I, § 3, subd. (b)(7); Gov. Code, § 54950 ("the public commissions,
boards and councils and the other public agencies in this State exist to aid in the conduct
of the people's business.  It is the intent of the law that their actions be taken openly and
that their deliberations be conducted openly"); see also Gov. Code, § 54953.7 (local
bodies "may impose requirements upon themselves which allow greater access to their
meetings than prescribed by the minimal standards set forth in this chapter").

[25] Cal. Const., art. I, § 3, subd. (b)(2).

[26] Gov. Code, § 54953, subd. (a).

[27] Gov. Code, § 54953.3; see 36 Ops.Cal.Atty.Gen. 175, 178 (1960).

23-102

Likewise, a legislative body cannot conduct a meeting in a facility "where members of the public may not be present without making a payment or purchase."[28]

The foregoing rules apply whenever there is a "meeting" of the legislative body of a local agency.[29] The Brown Act broadly defines a meeting in section 54952.2(a) as a "congregation of a majority of the members of a legislative body at the same time and location . . . to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body." The Act guards against evasion by providing in section 54952.2(b)(1) that a majority "shall not, outside a meeting authorized by this chapter, use a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter jurisdiction of the legislative body."

But section 54952.2(c) tempers the broad definition of a meeting by providing that any number of the members of a legislative body may attend certain events without violating the Brown Act. As discussed in detail below, section 54952.2(c)(2) creates an exception to the Brown Act for "a conference or similar gathering open to the public that involves a discussion of issues of general interest to the public or to public agencies of the type represented by the legislative body." And section 54952.2(c)(3) creates an exception for "an open and publicized meeting organized to address a topic of local community concern by a person or organization other than the local agency."

Familiar principles of statutory interpretation guide our consideration of the Brown Act and its exceptions.[30] "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose."[31] "In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning [citations]."[32] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."[33]

---

[28] Gov. Code, § 54961, subd. (a).

[29] Gov. Code, §§ 54953, 54953.3, subd. (a), 54961, subd. (a).

[30] See 103 Ops.Cal.Atty.Gen. 42, 43 (2020).

[31] *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.

[32] *Halbert's Lumber, Inc. v. Lucky Stores, Inc*. (1992) 6 Cal.App.4th 1233, 1238.

[33] *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.

6

As previously mentioned, however, the California Constitution contains a special rule requiring that language appearing in the Brown Act "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access."[34]  Even before the voters adopted that special rule, we had concluded "as a matter of general policy, that 'doubtful cases should be resolved in favor of open and public meetings.'"[35]  Indeed, when interpreting open meeting laws, the Attorney General "has not acted as the protector of the bureaucrat, but rather has consistently prodded the agencies involved to be more open in their activities."[36]  Our approach here is no different.

### 1.  If a Majority of the City Council Were to Attend the Chamber of Commerce Event, It Would Be a "Meeting" of the Council Within the Scope of the Brown Act

The first question asks whether the given set of facts would constitute a "meeting" of the city council under section 54952.2(a) if a majority of the council were to attend to the event.  The definition of a meeting under the Brown Act can be parsed into three elements.  The first element requires there to be a "congregation of a majority of the members of a legislative body at the same time and location."  The second element requires a collective intent "to hear, discuss, deliberate, or take action."  The third element requires that the object of that collective intent must be an "item that is within the subject matter jurisdiction of the legislative body."

As to the first element, a "congregation" can be simply a "gathering" or an "assembly of persons."[37]  Although the congregation must include a majority of the members of a legislative body, there is no requirement that the congregation consist of those members exclusively.  And because the mayor is a member of the city council, we may include the mayor when calculating whether a "majority" of the council had congregated at the same time and location under section 54952.2(a).[38]  Video of the event at issue here revealed that attendees were gathered together in a single place to listen to the mayor's speech.[39]  As such, there would have been a qualifying "congregation of a

---

[34] Cal. Const., art I, § 3, subd. (b)(2).

[35] 57 Ops.Cal.Atty.Gen. 209, 212 (1974); see 61 Ops.Cal.Atty.Gen. 220, 225 (1978).

[36] Comment, *Access to Governmental Information in California* (1966) 54 Cal. L.Rev. 1650, 1653, fn. 23.

[37] Merriam-Webster's Collegiate Dict. (11th ed. 2020) p. 262.

[38] We may also include the mayor when calculating whether a majority of the city council has engaged in "a series of communications" under section 54952.2(b).

[39] See note 18, *supra*.

23-102

majority of the members of the legislative body" if a majority of the city councilmembers had attended the event.

As to the second element of section 54952.2(a), we consider whether the city councilmembers would be congregated to "hear, discuss, deliberate, or take action" on an item. Our primary focus is on whether city councilmembers in the audience would be congregated to "hear" an item. In some situations, to hear an item might mean to consider it judicially.[40] In other settings, to hear an item can simply mean to listen to it with attention or understanding.[41] In this instance, we must adopt a broad interpretation of the term "hear" pursuant to our duty to construe section 54952.2(a) in favor of public access. Based on that interpretation, we have little doubt that attending the chamber of commerce event to listen to the mayor's speech would constitute "hear[ing]" an item within the meaning of the second element of section 54952.2(a). For this reason alone, we conclude the second element is satisfied.

In addition, because in this case the mayor is also a member of the city council, a mayoral address can also be likened to a "discussion" between the mayor and any councilmembers in the audience. We recognize that to "discuss" an item connotes a degree of reciprocity that is absent in a typical speech. This is particularly true in light of common definition of a "discussion" as meaning the "consideration of a question in open and usually informal debate."[42] But common definitions of what it means to "discuss" something include simply "to talk about" it or "to present [it] in detail for examination or consideration."[43] We believe that delivering a state of the city address reasonably fits within those common definitions, especially when the speaker and members of the audience are part of the same legislative body. As a result, the mayor's delivery of the speech to fellow councilmembers (albeit in the presence of others) supports our view that the councilmembers congregated to "hear" or "discuss" an item under the second element of section 54952.2(a).

Our overall conclusion in this regard is consistent with prior authorities. We have long described a "meeting" under the Brown Act as a gathering that involves the "collective acquisition and exchange of facts preliminary to the ultimate decision."[44] For

---

[40] Shorter Oxford English Dict. (6th ed. 2007) p. 1221.

[41] *Ibid*.; see Merriam-Webster's Collegiate Dict., *supra*, at p. 574.

[42] Merriam-Webster's Collegiate Dict., *supra*, at p. 358; see Shorter Oxford English Dict. *supra*, at p. 702 ("Examination (of a point) by argument etc.; debate; an exchange of views; a conversation").

[43] Merriam-Webster's Collegiate Dict., *supra*, at p. 358.

[44] 103 Ops.Cal.Atty.Gen., *supra*, at p. 52, fn. 54 (2020); 94 Ops.Cal.Atty.Gen. 33, 35-36 (2011).

example, in 58 Ops.Cal.Atty.Gen. 839 (1975), we observed that "informal luncheon meetings of a city council with members of civil organizations to discuss matters of civic concern would fall within the ambit of [t]he Brown Act even though no action is contemplated or taken."[45]  We concluded that the same would be true if a majority of a county board of supervisors gathers to receive a report from the grand jury "on matters pertaining to the operation of county government."[46]  And there is no reason why the rule would be different when members of a city council gather at a state of the city address to receive, or perhaps exchange, information on matters pertaining to the operation of city government.  In each instance, members of the relevant legislative body are engaging in the collective acquisition or exchange of information that is relevant to the performance of their official duties.

Finally, as to the third element of section 54952.2(a), there appears to be no dispute that the State of the City address involved an "item that is within the subject matter jurisdiction" of the city council.  The same terminology appears in the highly analogous Bagley-Keene Open Meeting Act, which applies to state governmental bodies.[47]  In that context, we have already concluded that "it would be inappropriate to adopt a definition of 'item' that would be limited to an item on an agenda."[48]  And we have explained that a body has "subject matter jurisdiction" over an item if the body has inherent authority to take action on the item.[49]  Here, the city council is the city's legislative body.[50]  It has broad power to "pass ordinances not in conflict with the Constitution and laws of the State or the United States."[51]  As such, the state of a

---

[45] 58 Ops.Cal.Atty.Gen. 839, 840 (1975), citing 43 Ops.Cal.Atty.Gen. 36 (1964).

[46] 58 Ops.Cal.Atty.Gen., *supra*, at p. 843; see Pen. Code, § 925 (grand jury "shall investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county"); Pen. Code, § 928 (a grand jury "may investigate and report upon the needs of all county officers in the county" and "shall cause of copy of such report to be transmitted to each member of the board of supervisors").

[47] Gov. Code, § 11122.5, subd. (a).  The Legislature modeled the Bagley-Keene Act after the Brown Act, and we construe their provisions in the same way absent a clear linguistic difference calling for a different result.  (103 Ops.Cal.Atty.Gen., *supra*, at p. 44; see *Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 799; *North Pacifica LLC v. California Coastal Com.* (2008) 166 Cal.App.4th 1416, 1434.)

[48] 103 Ops.Cal.Atty.Gen., *supra*, at p. 45.

[49] *Id*. at pp. 45-46.

[50] Gov. Code, § 34000; see Ventura City Charter, § 700.

[51] Gov. Code, § 37100.

particular city is reasonably understood as an item within the subject matter jurisdiction of its city council.

We thus have little doubt that the event at issue here involved at least one item within the subject matter jurisdiction of the city council.

## 2. The Chamber of Commerce Event Would Not Satisfy the Brown Act Exception for Conferences or Similar Gatherings

Section 54952.2(c)(2) creates an exception to the Brown Act for "a conference or similar gathering open to the public that involves a discussion of issues of general interest to the public or to public agencies of the type represented by the legislative body." If an event satisfies those elements, then a majority of the legislative body may attend the event without following the Brown Act's requirements for "meetings," so long as they "do not discuss among themselves, other than as part of the scheduled program, business of a specified nature that is within the subject matter jurisdiction of the local agency."[52] As discussed below, we conclude that the mayor's State of the City address at issue here would not satisfy this exception.

First we address whether the event in question was "open to the public" as required under section 54952.2(c)(2). The exception for a conference or similar gathering includes unique language stating that "[n]othing *in this paragraph* is intended to allow members of the public free admission to a conference or similar gathering at which the organizers have required other participants or registrants to pay fees or charges as a condition of attendance."[53] That language makes clear that members of a legislative body may attend a qualifying conference even if organizers require members of the public to purchase an admission ticket. But the exception as a whole also makes clear that ticket sales must be open to all members the public. In other words, organizers cannot restrict ticket sales to a particular group of people. Here, the city and the chamber of commerce indicated that anyone could purchase an admission ticket from the chamber, and we have received no information to the contrary. Based on these facts, it appears that the chamber of commerce event would satisfy the openness element of section 54952.2(c)(2).[54]

---

[52] Gov. Code, § 54952.2, subd. (c)(2).

[53] *Ibid*., italics added.

[54] Our requestor has not asked us to consider whether there are circumstances under which section 54952.2(c)(2) might require organizers to offer members of the public a discount short of the "free" admission disclaimed in the statute. As such, we have no occasion to consider here whether the price of admission charged to members of the public ($80) was significant either by itself or in comparison to the discounted admission

We next consider the meaning of a "conference or similar gathering" under section 54952.2(c)(2). The Legislature has not defined a "conference" in this context, nor has it identified the elements that would make a gathering sufficiently "similar" to a conference. But common definitions of a "conference" suggest that there must be multiple presentations facilitating an interchange of views among multiple parties.[55] This understanding is consistent with the statutory requirement that a qualifying conference or similar gathering must involve a "discussion" of issues.[56] In contrast, the event as described here consisted of a single speech by a single official regarding the conditions in a single city. As such, the event would not appear to qualify as a conference or similar gathering under section 54952.2(c)(2).

Our understanding of what qualifies as a conference or similar gathering under section 54952.2(c)(2) is consistent with the use of the word "conference" elsewhere in the Brown Act. In particular, section 54954 uses the same word when providing that the governing board of a school district may meet outside of the district to "[a]ttend a conference on nonadversarial collective bargaining techniques."[57] The Legislature appears to have been referring to training workshops like the ones formerly run by the California Foundation for Improvement of Employer-Employee Relations.[58] Those events typically lasted for several days and included "mock bargaining session[s], team-building exercises, and other activities designed to make the participants re-examine assumptions about labor-management relations."[59] As such, the events were readily distinguishable from the chamber of commerce event at issue here.

---

charged to member of the chamber of commerce ($60).

[55] See Cambridge English Dict., https://dictionary.cambridge.org/us/dictionary/english/conference (as of Apr. 17, 2024) ("an event, sometimes lasting a few days, at which there is a group of talks on a particular subject"); Britannica Dict., https://www.britannica.com/dictionary/conference (as of Apr. 17, 2024) ("a formal meeting in which many people gather in order to talk about ideas or problems related to a particular topic (such as medicine or business) usually for several days"); see also Merriam-Webster's Collegiate Dict., *supra*, at p. 260; Black's Law Dict. (10th ed. 2009) p. 360; Shorter Oxford English Dict., *supra*, at p. 486.

[56] Gov. Code, § 54952.2, subd. (c)(2).

[57] Gov. Code, § 54954, subd. (c)(1).

[58] See Sen. Bill No. 36 (1993-1994 Reg. Sess.) § 11, as introduced Dec. 7, 1992.

[59] Joanna Richardson, Calif. Foundation Urges New Approach to Labor Negotiations, Education Week (May 04, 1994); see Joanna M. Miller, School Districts' Teams Learn Gentle Style of Contract Negotiation, Los Angeles Times (Feb. 7, 1996) p. B6 (teams from Ventura County participated in a three-day event that included "role-playing,

23-102

Our conclusion is also consistent with the legislative history of section 54952.2(c)(2) itself. An earlier version of the exception would have applied to "general conferences, conventions, symposia, speeches, classes, and seminars . . . that involve a discussion of broad issues, and that are attended by a broad spectrum of officials from a variety of government agencies."[60] The Assembly replaced the quoted language with the current reference to a "conference or similar gathering . . . that involves a discussion of issues of general interest to the public or to public agencies of the type represented by the legislative body."[61] The amendment means that a qualifying event does not need to be attended by a broad spectrum of officials from a variety of government agencies.[62] But it also means that the exception applies only to conferences and to gatherings that are similar to conferences. That narrowed reference appears to include broadly faceted events like conventions, but not narrowly focused events like the chamber of commerce speech at issue here.

Finally, even if the chamber of commerce event qualified as a conference or similar gathering, we doubt that it involved "a discussion of issues of general interest to the public or to public agencies of the type represented by the legislative body" as required under section 54952.2(c)(2). As to the first prong of "general interest to the public," the statutory language refers to "the public" without any narrowing qualification or modification. As such, an issue "of general interest to the public" is most reasonably read as being of general interest to the public as a whole, not just to those members of the public who happen to live or work within the territorial jurisdiction of the legislative body. Indeed, as discussed further below, the Legislature created a separate exception in section 54952.2(c)(3) for meetings that address a topic of "local community concern." Because the Legislature used different language in different subdivisions of the same statute, we presume that it intended to create a distinction between an issue of "general

---

brainstorming and group discussions").

[60] Sen. Bill No. 36 (1993-1994 Reg. Sess.) § 7, as amended Aug. 19, 1993; see 1 Sen. Final Hist. (1993-1994 Reg. Sess.) p. 40; 2 Assem. J. (1993-1994 Reg. Sess.) p. 3461.

[61] Sen. Bill No. 36 (1993-1994 Reg. Sess.) § 2, as amended Sept. 8, 1993; see 1 Sen. Final Hist. (1993-1994 Reg. Sess.) p. 40; 3 Assem. J. (1993-1994 Reg. Sess.) p. 4247.

[62] See California Attorney General's Office, The Brown Act: Open Meetings for Local Legislative Bodies (2003) p. 9 ("the conference need not necessarily be a conference of public agencies to fall within the exemption; rather, the gathering could be a conference of media outlets, environmental organizations, health care entities, [or] social welfare organizations").

23-102

interest to the public" under section 54952.2(c)(2) and a topic of "local community concern" under section 54952.2(c)(3).[63]

Here, we have no doubt that the State of the City address delivered during the chamber of commerce event was of general interest within the city. But we suspect that it was of only limited interest outside of the city. As a result, our obligation to construe section 54952.2(c)(2) in favor of open access compels us to conclude that the chamber of commerce event did not involve a discussion of issues of general interest to the public as a whole.

We reach the same conclusion when considering whether the event involved issues of general interest to "public agencies of the type represented by the legislative body" under section 54952.2(c)(2). It is not enough for the issues to be of general interest to the relevant legislative body itself. Rather, the issues must be of interest to other public agencies that are of the same type as the legislative body. The type of public agency at issue here is a city council.[64] We therefore consider whether the chamber of commerce event involved issues of general interest to other city councils on a categorical basis.

Similar to our conclusion above, we have no doubt that the State of the City address delivered during the chamber of commerce event would be of general interest to members of the Ventura city council. But we doubt whether it would also be of general interest to other city councils on a categorical basis. As such, our duty to resolve doubts in favor of open access compels us to conclude that the chamber of commerce event did not include a discussion of issues of general interest to public agencies of the type represented by the city council under section 54952.2(c)(2).

Our conclusions here are consistent with our longstanding interpretation of nearly identical language in the Bagley-Keene Open Meeting Act. Similar to the Brown Act, the Bagley-Keene Act includes an exception in section 11122.5(c)(2)(A) that allows a majority of the members of a state body to attend "a conference or similar gathering open to the public that involves a discussion of issues of general interest to the public or to public agencies of the type represented by the state body." We have long advised state bodies that, if a conference "only focuses on the laws or issues of a particular body it would not be exempt under the Act."[65]

---

[63] See *Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352.

[64] See Gov. Code, § 54950 (referring to the "public commissions, boards and councils and the other public agencies in this State"); see also Gov. Code, § 54951 ("local agency" includes any board, commission, or agency of a city).

[65] California Department of Justice, Bagley-Keene Open Meeting Act Guide (2023) p. 11; see California Attorney General's Office, A Handy Guide to the Bagley-Keene

There is no apparent reason why the rule under the Brown Act would be different than it is under the Bagley-Keene Act. We recognize that, as a general rule, the subject matter jurisdiction of a city council is more diverse than the subject matter jurisdiction of a state body.[66] But the fact that there might be many different issues confronting a particular city council does not mean that those issues are necessarily of general interest to the public as a whole or to other city councils on a categorical basis. This is especially true with regard to a state of the city address, because such an address typically discusses issues only as they relate to the relevant city.

As a result, we conclude that the chamber of commerce event would not have qualified as a conference or similar gathering, much less one that involved a discussion of issues of general interest to the public or to public agencies of the type represented by the city council under section 54952.2(c)(2).[67]

### 3. The Chamber of Commerce Event Would Not Satisfy the Brown Act Exception for Community Meetings

Section 54952.2(c)(3) creates an exception to the Brown Act for "an open and publicized meeting organized to address a topic of local community concern by a person or organization other than the local agency." If an event satisfies those elements, then a majority of the legislative body may attend the event without the event being a "meeting" subject to the Brown Act's requirements for open meetings so long as they "do not discuss among themselves, other than as part of the scheduled program, business of a specific nature that is within the subject matter jurisdiction of the legislative body of the local agency."[68] As discussed below, we conclude that the chamber of commerce event

---

Open Meeting Act (2004) p. 7.

[66] See Gov. Code, § 37100.

[67] Our requestor has proffered an alternative reason why the given facts would not satisfy the exception in section 54952.2(c)(2). He suggests that the exception allows "only 'passive' attendance at a conference, versus the 'active' participation of the mayor delivering the address about city business to a quorum of the council." (Requestor Letter, *supra*, at p. 3.) But we have already advised that, at a qualifying conference or similar gathering, members of a legislative body "may enter into discussions on issues or business affecting their local agency in a public forum as part of the scheduled program of the conference." (California Attorney General's Office, The Brown Act: Open Meetings for Local Legislative Bodies, *supra*, at p. 9.) There is no reason to reconsider that advice here.

[68] Gov. Code, § 54952.2(c)(3).

would not have been sufficiently "open" to satisfy this exception because attendees had to purchase a ticket to gain access.

The word "open" generally denotes a lack of secrecy, as in a meeting that is "exposed to general view or knowledge."[69]  It can also refer to a meeting that is "not restricted to a particular group or category of participants."[70]  Here, members of the public could attend the chamber of commerce event in person only if they purchased a ticket from the chamber.  And there was no other way for them to watch the mayor's address in real time.  In other words, the event was necessarily restricted to a particular group or category of participants, that is, those who were financially able and otherwise willing to pay the price of admission.  As a result, the event would not have been sufficiently "open" under section 54952.2(c)(3).[71]

As discussed above, the conference exception under section 54952.2(c)(2) expressly allows the charging of admission: "[n]othing in *this paragraph* is intended to allow members of the public *free admission* to a *conference or similar gathering*."[72]  No such language appears in section 54952.2(c)(3) regarding community meetings.  The absence of such language appears to have been intentional, because the Legislature enacted both exceptions at the same time.[73]  As a result, under the familiar maxim that the expression of one thing is the exclusion of the other, we presume that the allowance for charging admission in section 54952.2(c)(2) applies only to conferences and similar gatherings, and not to the events termed community meetings under section 54952.2(c)(3).[74]

---

[69] Merriam-Webster's Collegiate Dict., *supra*, at p. 868.

[70] *Ibid*.

[71] Our conclusion regarding admission fees does not necessarily extend to solicitations for donations, sponsorships, or the purchase of goods or services that organizers do not require as a condition of attending a community meeting.  It would remain good practice, however, for any such solicitation to include a statement indicating that members of the public may attend the community meeting free of charge.  (See Gov. Code, § 54953.3.)

[72] Italics added.

[73] Stats. 1993, ch. 1137, § 2; Sen. Bill No. 36 (1993-1994 Reg. Sess.) § 2, as amended Sept. 8, 1993.

[74] See *In re J.W.* (2002) 29 Cal.4th 200, 209; *Craven v. Crout* (1985) 163 Cal.App.3d 779, 783 ("Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent").

We reiterate that our conclusion as to this exception is based on the fact that there was no way for members of the public to participate in the Ventura chamber of commerce event free of charge. Although the city told the public that the mayor's address would be available on the Internet, it also indicated that the address would not be available until sometime later, after the event was over.[75] In our view, the option of watching a recording of an event sometime "later" is not enough to satisfy the openness requirement of section 54952.2(c)(3).

## 4. No Other Brown Act Exceptions Apply

Before concluding our analysis, we note that we have received comments suggesting that a state of the city address might satisfy the Brown Act exception for a "purely social or ceremonial occasion" under section 54952.2(c)(5).[76] That exception allows a majority of a legislative body to attend a purely social or ceremonial occasion so long as they "do not discuss among themselves business of a specific nature that is within the subject matter jurisdiction of the legislative body."[77] Although our requestor did not ask about that particular exception, it is at least arguably included in his request that we determine whether a Brown Act violation would have occurred here had a majority of councilmembers attended.[78] As such, and given that the exception is the only remaining Brown Act exception that might conceivably apply to the circumstances, we briefly address it here.

We begin by considering what it means for an occasion to be "purely social or ceremonial" under section 54952.2(c)(5). An occasion is commonly understood as being "social" if it is "marked by or passed in pleasant companionship with friends or associates."[79] No matter how pleasant an occasion might be, however, it cannot be

---

[75] City of Ventura, Facebook (Sept. 16, 2022) https://www.facebook.com/CityofVentura/posts/456982029809969 (as of Apr. 17, 2024).

[76] See, e.g., Comment Letter from League of California Cities (May 25, 2023) pp. 3-4 (some addresses "are purely ceremonial events intended to celebrate the city and its residents and [are] not related to any legislative or policy-making matters"); Comment Letter from California Chamber of Commerce (Mar. 24, 2023) p. 2 (members of a legislative body who merely attend an address perform a "role [that] is strictly ceremonial").

[77] Gov. Code, § 54952.2, subd. (c)(5).

[78] As mentioned above, our requestor phrased the first question as being whether a particular set of facts would amount to a "violation" of the Brown Act. And a "violation" implies that the same set of facts would not satisfy any exception to the Brown Act.

[79] Merriam-Webster's Collegiate Dict., *supra*, at p. 1183; see Shorter Oxford English Dict., *supra*, at p. 2903 ("consisting of people associated together for friendly interaction

16

considered "purely social" under the Brown Act if it is "arranged for pursuit of the public's business."[80] As for the meaning of a "ceremonial" occasion, a common definition of the term involves something that has "no real power or influence."[81] Examples of a "ceremonial role" under analogous provisions of the Political Reform Act include "throwing out the first pitch at a baseball game; cutting a ribbon at an opening; making a presentation of a certificate, proclamation, award, or other item, such as the key to the city."[82]

It is notable that the exception in section 54952.2(c)(5) applies only if the "occasion" itself is "purely" social or ceremonial. In other words, the exception applies only if an occasion is completely, exclusively, and genuinely social or ceremonial.[83] As such, an occasion that it partially or even predominately social or ceremonial would not qualify.

We conclude that the given facts would not qualify as a purely social or ceremonial occasion under section 54952.2(c)(5). We recognize that a typical state of the city address involves a degree of social interaction and ceremonial pomp. But that does not mean that the entire occasion is *purely* social or ceremonial. Indeed, we have received comments suggesting that a state of the city address can have a significant effect or influence on the local legislative process. For example, the League of California Cities tells us that a state of the city address could "outline the plans and goals for the coming year" and "highlight specific initiatives or projects."[84] And the California Chamber of Commerce similarly takes the view that a state of the city address can include "upcoming priorities and important projects."[85] The National League of Cities has likewise published their own guidance stating that a state of the city address may "recognize areas for improvement" and "set the policy agenda for the year ahead."[86] As a result, we conclude that the chamber of commerce event at issue here would not satisfy section 54952.2(c)(5) or any other exception to the Brown Act.

---

or companionship").

[80] *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors* (1968) 263 Cal.App.2d 41, 50, fn. 8.

[81] Merriam-Webster's Collegiate Dict., *supra*, at p. 202.

[82] Cal. Code Regs., tit. 2, § 18942.3.

[83] Shorter Oxford English Dict., *supra*, at p. 2408; see Merriam-Webster's Collegiate Dict., *supra*, at p. 1010.

[84] Comment Letter from League of California Cities, *supra*, at p. 2.

[85] Comment Letter from California Chamber of Commerce, *supra*, at p. 2.

[86] National League of Cities, How to Deliver an Effective State of the City Address (2016) p. 2.